**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Daniel R. WOLFE, Defendant-Appellant.**
**No. 13612.**

United States Court of Appeals
Seventh Circuit.

Sept. 14, 1962.

Rehearing Denied Oct. 8, 1962.

Patrick W. O'Brien, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., S. John Templeton, Jr., Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Daniel R. Wolfe, defendant herein, was tried by the court without a jury on an indictment returned by the June 1961 grand jury, charging that on or about December 31, 1960, he did, with intent to defraud, knowingly and wilfully utter and pass to one Mildred Ballinger approximately thirty-three falsely made, forged and counterfeited obligations of the United States ($5 bills), in violation of Section 472, Title 18 United States Code.[1] Defendant was found guilty and judgment was entered committing him to imprisonment for a period of three years. He has appealed from that judgment.

Introduced by the government, the testimony of Mildred Ballinger and a state-ment signed by defendant on March 28, 1961 tended to prove the facts which we now set forth.

Prior to Christmas 1960 defendant talked to Joe Messina, owner of the 1549 Club in Chicago. Messina wanted to sell counterfeit bills to defendant, who expressed an interest but who notified the Federal Bureau of Investigation that he knew where there were going to be some counterfeit notes. A day or two later he and Messina again talked on the same subject, and defendant was told that the notes were then ready. He then talked to Ballinger,[2] known to him as "Toni Turco", who needed money. He told her that Messina had counterfeit money and she stated she would like to have some. Defendant procured $1,000 in counterfeit $5 bills from Messina. The next day he called the FBI and said he had the counterfeit money. Later an FBI agent told him "not to mess with the counterfeit money and to get rid of any that I had." The same day, defendant called Ballinger and told her that he had some of the "stuff", whereupon she came to him at the 4501 Club and he pulled from his coat a quantity of counterfeit $5 bills, which she put in her purse or pocket. He returned the remainder to Messina and told him that he had given the notes to Ballinger, who once worked for Messina. When giving the money to Ballinger, defendant said it could be passed "downtown" (meaning Allgauer's where she and her husband had worked). He also said, "It is phoney. It is queer money", and "It will be a good night to pass it on New Year's Eve." After that, Ballinger put the money in her coat pocket and went down the street to Al's Liquor Store, where she bought a glass of beer, giving therefor one of the $5 bills. She then hurried home, got into an argument with

1. 18 U.S.C.A. § 472:
    "Whoever, with intent to defraud, *passes, utters*, publishes, *or* sells, or attempts to pass * * * any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,-000 or imprisoned not more than fifteen years, or both." (Italics supplied.)

2. She was indicted on February 2, 1961 for passing and uttering a $5 bill on January 1, 1961. She pleaded guilty and was placed on probation on June 5, 1961.

her husband, wished her mother a "Happy New Year", and left in a cab, going to a tavern where she bought a drink and put one of the bills on the bar. She having gone into the ladies' room, police officers knocked on the door and demanded that it be opened, which caused her to try to tear up the money and throw it down the flush bowl. The officers entered, arrested her and seized the money, which is in evidence in this case.

1. Nevertheless defendant argues that, under the holdings of various state court decisions and the federal cases of United States v. Mitchell, 26 Fed.Cas. p. 1276, Circuit Court, District of Pennsylvania (1831), and United States v. Peoni, 2 Cir., 100 F.2d 401 (1938), there is no evidence that he passed or uttered the counterfeit bills to Ballinger or that he had an intent to defraud when he handed them to her.

■ It is clear that he knowingly had in his possession counterfeit bills. It is also clear that he disposed of them by handing them to Ballinger for the purpose of putting them into circulation. She wasted no time in starting the circulatory process. Whether or not the introduction of some of the bills into the toilet plumbing would itself suffice, we are not required to decide. Certainly she did spend two of the bills as above related. This constituted two acts of circulation of the kind which he intended when he turned them over to her, and were frauds upon those who received them. There is sufficient proof to establish defendant's intent to defraud.

In United States v. Mitchell, supra, the court said, in part, at 1276–1277, when charging the jury:

"* * * To convict a party for uttering or passing, he must have been present at the act. 2 Leach, 1096; 2 East, P.C. 974; Russ. & R. 25, 249, 363. But if he delivers the paper to a servant, to be sent to a customer (Russ. & R. 212; 2 Leach, 1048; 4 Taunt. 300), or is sufficiently near to the person who utters or passes it with his privity to give his assistance (Russ. & R. 363), or acts his part, or does any thing connected with the uttering or passing (Russ. & R. 446), the party accused is considered as present. So if he, knowing the paper to be counterfeit, delivers it to another, who, knowingly, passes it as true * * *. The note is uttered when it is delivered for the purpose of being passed. When put off they are passed, and every person who is present and consenting to the uttering or passing, or in any way aiding or assisting in doing it, or doing any act or thing in concert with the person who utters or passes the paper, which is connected with their common object, is guilty of the offence. * * *"

Defendant also cites but is unable to reconcile United States v. Nelson, 27 Fed.Cas. p. 80, District Court, Western Michigan (1867), where the court said at 82:

"The congress of the United States has defined it an offense to utter, pass, publish, or sell a counterfeit United States note, with intent to deceive or defraud, omitting the words 'as true,' or any equivalent words. The manner of passing, or the terms upon which the notes are put off or disposed of, are not material, so long as the delivery or putting off of the false notes be as and for money, in lieu of money, or to be used as and for money, with intent to deceive or defraud.

"And whether receiver knew the notes were false or not; whether he took them at what their face purported, or for one-half, or one-third, or any other value, if the purpose was to put them into circulation as money, it is not only passing, but as the tendency would be to defraud the government, it must be held to be passing with intent to defraud the United States. A sale and delivery for circulation of forged notes is a felonious passing within the act of congress."

2. We are unimpressed by defendant's contention that he was acting at all relevant times on behalf of Federal Bureau of Investigation agents. Whether he was acting for and on behalf of that Bureau in the transactions now under scrutiny was a question of fact for the district court to decide. We cannot say that the result reached is unsupported by the evidence in the record.

3. Defendant also contends that there should be a reversal of his conviction because Ballinger, described as "the witness for the government", was a victim of inhumane coercion by the investigating officials. It is argued that the due process clause of the fifth amendment to the federal constitution assures appropriate procedure, bars police procedure which violates the basic notions of our accusatorial mode of prosecuting a crime, and, therefore, vitiates a conviction based on the fruits of such procedure, citing Watts v. Indiana, 338 U.S. 49, 55, 69 S.Ct. 1347, 1350, 93 L.Ed. 1801.

While no contention is made that any improper procedure was used against defendant in this case, it is urged that the government's witness, Ballinger, was exposed to brutal treatment following her arrest on New Year's morning, 1961, which defendant's counsel now describes as "torture". We find there is absolutely no evidence to support this charge, except a brief volunteered and unexpected answer which she gave while testifying. This lady was being cross-examined by defense counsel about two statements which she gave a government agent while in custody. Whereupon, in an apparent effort to show that Ballinger was intoxicated when she made these statements, she was asked whether she was not given liquor while in custody, to which she replied:

"A I did not have a bit of food or nothing to drink for three days.

"Q Food or water?

"A No, sir.

"Q. Then, how many statements did you sign?

"A Two."

This seems to be the entire record that this witness was "tortured". Inasmuch as one of these "three days" included New Year's Eve, and the second day was New Year's Day, the serious charge of deprivation of federal constitutional rights seems to lack substance.

This conclusion is buttressed by the fact that in the district court she was represented by counsel of her own choice, entering a plea of not guilty, and then a plea of guilty to a charge of passing and uttering a $5 bill (footnote 2, ante 799).

We are not unmindful that a case might well arise where the procurement of evidence to be used in a federal prosecution might have been obtained by proved coercion violative of the constitutional rights of a *witness* and that a serious question might arise in that event upon the use of such evidence upon the trial of *defendant*. However, such a case is not before us now and evidently the experienced district court, who saw and observed Ballinger testifying, detected no circumstances warranting rejection of her testimony. Although the constitutional contention now made by counsel for defendant was not made in the district court, nevertheless we have fully considered and rejected it.

For these reasons the judgment of the district court is affirmed.

At the request of defendant, this court appointed Patrick W. O'Brien, Esquire, of the Illinois bar to represent him. We have observed the able service rendered by Mr. O'Brien. It is appreciated by the court.

Judgment affirmed.