No. 1481, Misc. BRADFORD v. MICHIGAN. Ct. App. Mich. Motion for leave to supplement petition granted. Certiorari denied. *Frank J. Kelley,* Attorney General of Michigan, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman,* Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, dissenting.

During the early morning hours of November 5, 1962, two Benton Harbor, Michigan, policemen stopped an automobile in the course of investigating a robbery. They were shot by the occupants of the vehicle and seriously wounded. Shortly thereafter LeRoy Payne was arrested. He was brutally treated by his captors until he confessed, implicating petitioner. Payne then became the State's chief trial witness. Petitioner was convicted of assault with intent to commit murder and was sentenced to a term of 20 to 40 years.

At petitioner's trial the State conceded that Payne testified truthfully concerning the manner in which the police had obtained his confession. The police campaign to compel Payne to confess began upon Payne's arrest. On the way to the police station Payne was called a "dirty bastard" and a "nigger." The police suggested that they might throw him out of the police car and then shoot him, claiming that he had attempted to escape. Payne was questioned for two days without food, water, or sleep; he was informed that all three necessities of life would be provided once he confessed and informed the police as to the identity of his accomplice. During the course of questioning Payne was beaten about the face until both eyes were blackened, was kicked and was held by one officer while the other twisted his fingers and then squeezed his testicles.

Finally, the police threatened to prosecute Payne's wife for perjury and to have his children taken away. The State admits that the confession implicating petitioner was the product of these tactics.

Prior to petitioner's trial Payne had entered a guilty plea but had not as yet been sentenced. Although he stated that his testimony was not prompted by fear, Payne later signed an affidavit to the contrary. In this affidavit, presented to the trial court at petitioner's motion for a new trial, Payne insisted:

> "At the time of Mr. Bradford [petitioner's] trial I was in fear of my life, safety of my family. As a result of this I gave false testimony at the preliminary hearing and trial of Mr. Bradford. The only part of my testimony [which was true] at that time was that of the treatment I received at the hands of the police."

On June 15, 1967, Payne's guilty plea was set aside on the basis that it was involuntary.

It is now a commonplace that coerced confessions are inadmissible at criminal trials because they are untrustworthy and the methods used to obtain them offend the principle that our system of criminal justice is accusatorial not inquisitorial. *Rogers* v. *Richmond,* 365 U. S. 534, 540–541 (1961). Nor do I think it relevant that the coercion in this case was exerted against the chief state witness rather than the accused. As was said by Mr. Justice Rutledge, dissenting in part in *Malinski* v. *New York,* 324 U. S. 401, 430–431 (1945):

> "Due process does not permit one to be convicted upon his own coerced confession. It should not allow him to be convicted upon a confession wrung from another by coercion. A conviction supported only by such a confession could be but a variation of trial by ordeal."

Admission of Payne's trial testimony was, in my view, a violation of due process as it was cut from the same fabric that produced his original statement. Even if the brutality ceased at the time Payne confessed, he remained under the control of those who had elicited the confession. See *Chambers* v. *Florida,* 309 U. S. 227, 235 (1940). Faced with memories of his ordeal and with the fact that he had not as yet been sentenced, Payne had little choice but to repeat at trial what the police had earlier forced from his lips, as is conclusively demonstrated by the fact that Payne's plea has been found involuntary.

Since I cannot separate Payne's trial testimony from the original coercion, and because I believe that the majesty of the law cannot be enhanced by a conviction based on such medieval cruelty, I would grant certiorari and reverse this conviction.