**Peter F. LaFRANCE, Petitioner, Appellee,**

v.

**George H. BOHLINGER, III, etc., Respondent, Appellant.**

**No. 73-1327.**

United States Court of Appeals, First Circuit.

Argued Jan. 5, 1974.

Decided June 28, 1974.

See also, 1 Cir., 487 F.2d 506.

Bernard Manning, Asst. Atty. Gen., Boston, Mass., with whom Robert H. Quinn, Atty. Gen., John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Div., and David A. Mills, Asst. Atty. Gen., Chief, Crim. Appellate Section, Boston, Mass., were on brief, for appellant.

Alexander Whiteside, II, Boston, Mass. by appointment of the Court, with whom Putnam, Bell & Russell, Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, and Mc-ENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The main question on appeal is whether a state judge committed constitutional error when he permitted the district attorney to use a witness' prior statement to the police to impeach the witness without a judicial inquiry into its voluntariness and without instructing the jury to pass on its voluntariness. *Cf.* Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The district court ruled that the trial judge's treatment of the statement, which implicated the accused as well as the witness in the crimes for which the former was on trial, violated the right of the accused to due process of law. Massachusetts contends that the *Jackson* requirements apply only to confessions of an accused, and that procedures required in that case should not be extended to the prior statements of a witness.

The accused, LaFrance, petitioned in the district court for a writ of habeas corpus, and this appeal is from allowance of the writ. He sought release from a Massachusetts correctional institution where he was confined after convictions for manslaughter, leaving the scene of an accident, and operating a motor vehicle without a license and so as to endanger. The facts are set forth comprehensively in the district court's opinion, 365 F.Supp. 198 (D.Mass.1973), as well as in the earlier Supreme Judicial Court opinion, affirming LaFrance's state conviction, 1972 Mass.Adv.Sh. 177, 278 N.E.2d 394. We thus restate only the most essential facts.

■ LaFrance was indicted for the hit and run death of Paul Butler, who had been struck by a speeding car while standing on the side of the road. Neither the car nor its occupants were identified at the time, and the car itself was never found. At a jury trial in the Superior Court the prosecution presented evidence that LaFrance was aware of the accident suspiciously soon after it had occurred, that he had attempted to get the people whose apartment he had been visiting to provide a false alibi, and that he had admitted guilt in a telephone call to one Wendall Frost. By itself, this evidence was legally sufficient to convict, as the Supreme Judicial Court found. Commonwealth v. LaFrance, *supra*, 278 N.E.2d at 396. In defense LaFrance took the stand to deny having left the apartment that evening, a complete alibi if believed. Earlier LaFrance's companion, Richard Brown, who was called as a government witness, had likewise testified that he and LaFrance remained at the apartment all evening. However, the prosecutor had shown Brown a typed statement which Brown acknowledged having signed at the police station. In the statement Brown recounted that LaFrance and he had left the apartment, climbed into a stolen car, and, with LaFrance driving, had struck something.

With the court's permission, and over the objections of the defense, the district attorney led and vigorously examined Brown with respect to the contents of the statement. When asked why, in light of his current testimony, he had said what he did, Brown replied that officer Dale Clark had treatened him; he testified that the statement was, in effect, a police fabrication signed because he was strung out on drugs, frightened, and willing to say anything to get back to his cell. Brown denied that the statement was given of his own free will, and persisted in maintaining that it was false.[1]

The court advised the jury that the statement was to be regarded solely to determine whether Brown's testimony was truthful and not as evidence that LaFrance had committed the crimes charged. The officers present when Brown gave the statement also testified, asserting that Brown provided all the

---

1. Brown's full testimony, which we do not repeat, concerning his physical and mental condition at the time he gave the statement was accurately summarized by the district court, *see* LaFrance v. Bohlinger, *supra* at 201–203.

details, seemed "normal", and made no physical complaints, although he "broke down and shook and wept; and said he thought this whole thing was a dream."

■ The district court decided three issues. First, it rejected, as do we, the Commonwealth's contention that LaFrance did not exhaust state remedies. Although the opinion of the Supreme Judicial Court dealt mostly with state law issues, LaFrance's brief before the court raised, if secondarily and without much focus, the relevant federal claims. Both *Jackson, supra* and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed. 2d 593 (1967), were cited, and LaFrance specifically complained of the court's neglect "even to inquire whether the statement had been voluntarily made."

■ Second, the district court rejected what it labelled the "confrontation contention", namely that LaFrance was deprived of the right to confront the witness against him when the contents of Brown's out of court statement were put before the jury. We agree that neither Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), nor Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), apply. In neither case could the witness whose prior statement was in issue be cross examined. Brown, to the contrary, was present and available for cross examination; he did not invoke his privilege against self-incrimination. There was no inability to confront. Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971); California v. Green, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

The final point raised before the district court was that Brown's inculpatory statement should not have been admitted, even for impeachment, without a determination that it was voluntary. The district court, equating the statement with a confession, held that it could not be admitted without a prior judicial determination of voluntariness and without submission of the issue of voluntariness to the jury. We agree that there

was a sufficient factual issue concerning whether the statement was coerced to necessitate a prior judicial hearing, out of the jury's presence. But we do not agree that the constitution required the court to submit the issue of voluntariness to the jury.

In *Jackson* the Court emphasized that the Fourteenth Amendment forbade the use of an involuntary confession not only because of its probable unreliability but also,

> "because of the 'strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will.'" *Id.* at 386, 84 S.Ct. at 1785.

Indeed this, rather than emphasis upon presumed unreliability, was the rationale, Mr. Justice White, the author of *Jackson*, made this point unmistakably in Lego v. Twomey, 404 U.S. 477, 484–485, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972):

> "We noted in *Jackson* that there may be a relationship between the involuntariness of a confession and its reliability. [footnote omitted] But our decision was not based in the slightest on the fear that juries might misjudge the accuracy of confessions and arrive at erroneous determinations of guilt or innocence. . . .
>
> "Quite the contrary, we feared that the reliability of even coerced confessions could impermissibly influence a jury's judgment as to voluntariness. The use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles. Rogers v. Richmond, 365 U.S. 534, 540–541, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). [footnote omitted] The procedure we established in *Jackson* was designed to safeguard the right of an individual, entirely apart from his guilt or innocence, not to be compelled to condemn himself by his own utterances. Nothing in *Jackson* questioned

the province or capacity of juries to assess the truthfulness of confessions."

The rationale is important, because if the only infirmity of Brown's statement could be its possible unreliability, we might well conclude that the jury was the proper party to pass on that. Use of the statement was limited to impeachment, which meant that the jury was supposed merely to regard it as an item of evidence against which to weigh Brown's current testimony. Deciding what weight to give evidence is a jury's traditional task. There is no reason to assume that a judge is better equipped.

But *Jackson* and *Lego* reject combining into a single jury question the issue of coercion and that of the statement's weight and reliability. They hold that the court (or a separate jury apart from the trial jury) must pass on voluntariness to make certain that decision on that question is not influenced by impressions of guilt or innocence. At stake is not "improving the reliability of jury verdicts", see *Lego, supra* at 486, 92 S.Ct. 619, but screening out evidence which, if found to be induced by coercion, is unacceptable regardless of its truth or untruth.

> "Due process of law requires that a coerced confession be excluded from consideration by the jury. It also requires that the issue of coercion be tried by an unprejudiced trier, and, regardless of the pious fictions indulged by the courts, it is useless to contend that a juror who has heard the confession can be uninfluenced by his opinion as to the truth or falsity of it. . . . The rule excluding a coerced confession is more than a rule excluding hearsay. . . . Morgan, Some Problems of Proof Under the Anglo-American System of Litigation (1956), 104–105." *Jackson, supra* at 382–383 n. 10, 84 S.Ct. at 1784.

At first blush, the same reasoning might seem equally applicable to any coerced statement, whether or not that of the accused. Nonetheless, we should not overlook some important differences, even where the statement, as here, has many confession-like traits. The major differences are as follows:

1. An impeaching statement is not substantive evidence of guilt. A confession, on the other hand, is the most damning evidence against a defendant and therefore deserving, perhaps, of greater care before it is admitted.

2. Exclusion of involuntary confessions is a principle rooted in the common law. Although there have been many different rules, there has never been significant support for the use of confessions secured by outright coercion. There is no such clear legal tradition for the suppression of involuntary impeaching statements. Indeed, a few jurisdictions have permitted even involuntary confessions to be used for impeachment.[2] *See* III J. Wigmore, Evidence § 821 n. 9 (Chadbourn rev. 1970).

3. It is clear that the exclusionary rule neither demands nor permits an absolute parallel between affirmative evidence and impeaching statements. *See* Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). In Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Court reaffirmed the distinction, holding that a confession received without *Miranda* warnings may be used to impeach a defendant who voluntarily elects to testify.

4. Arguably there is greater urgency for a hearing outside the jury's presence in confession cases. If an accused is not afforded such a hearing at which he can present evidence of coercion, he is forced to choose between remaining silent at his trial or taking the stand, thus opening himself to cross examination and impeachment. A witness such as Brown was faced with no such dilemma.

5. Any extension of exclusionary rules and procedures tends to complicate trials, and may result in withholding im-

2. In Commonwealth v. Kleciak, 350 Mass. 679, 216 N.E.2d 417 (1966), the court reversed its older holding that an involuntary confession could be used for impeachment.

portant evidence from the jury. To add, except for very good reason, to the underbrush of legal technicalities at this time seems undesirable.

■ 6. Finally, persons not themselves the victims of illegal government conduct typically lack standing to assert the constitutional rights of others. To the extent that only Brown's rights may have been violated, LaFrance should not be allowed to invoke vicariously an exclusionary rule. Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); United States v. Pruitt, 464 F.2d 494, 495 (9th Cir. 1972); United States v. Schennault, 429 F.2d 852, 855 (7th Cir. 1970).

The foregoing list provides potent reasons not to treat a witness' impeaching statement like a confession. But we must also examine the other side of the coin.

It is unthinkable that a statement obtained by torture or by other conduct belonging only in a police state should be admitted at the government's behest in order to bolster its case. This was the thinking of the *Jackson* court; and precisely because the jury's concern with convicting a guilty defendant might lead it to credit a coerced confession, the Court required a separate hearing. Yet methods offensive when used against an accused do not magically become any less so when exerted against a witness.

> "Due process does not permit one to be convicted upon his own coerced confession. It should not allow him to be convicted upon a confession wrung from another by coercion. [footnote omitted] A conviction supported only by such a confession could be but a variation of trial by ordeal."

Malinski v. New York, 324 U.S. 401, 430–431, 65 S.Ct. 781, 89 L.Ed. 1029 (1945) (Rutledge, J., dissenting). *See also* Bradford v. Michigan, 394 U.S. 1022, 89 S.Ct. 1738, 23 L.Ed.2d 48

(1968) (Warren, J., dissenting from denial of certiorari); Hysler v. Florida, 315 U.S. 411, 423–424, 65 S.Ct. 688, 86 L.Ed. 932 (1942) (Black, J., dissenting). Involuntary confessions have been excluded both because of the danger of unreliability and, more importantly, out of a sense of fundamental unfairness best expressed as the "deep-rooted feeling that the police must obey the law while enforcing the law". Spano v. New York, 360 U.S. 315, 320–321, 79 S.Ct. 1202–1206, 3 L.Ed.2d 1265 (1959). *See generally* Developments in the Law—Confessions, 79 Harv.L.Rev. 935 (1966). Since a statement coerced from an accused is neither less trustworthy than one from a witness nor more offensive to society's sense of fairness, it would seem illogical invariably to require a *Jackson* hearing in the first case but never in the second.[3] *See* People v. Underwood, 61 Cal.2d 113, 37 Cal.Rptr. 313, 389 P.2d 937 (1964) (en banc); People v. Newman, 30 Ill.2d 419, 197 N.E.2d 12 (1964). *Contra,* State v. Paul, 83 N.M. 619, 495 P.2d 797 (1972); People v. Bradford, 10 Mich.App. 696, 160 N.W.2d 373 (1968), cert. denied, 394 U.S. 1022, 89 S.Ct. 1638, 23 L.Ed.2d 48 (1969). *See also* Comment, The Right of a Criminal Defendant To Object to the Use of Testimony Coerced From a Witness, 57 Nw.U.L.Rev. 549 (1962); Note, 58 Geo. L.J. 621 (1970).

The due process requirements of a fair trial clearly extend to matters dealing with a witness' credibility. In Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959), the Court said,

> "The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness."

---

3. The issue has been raised in federal cases, but not decided. *See, e. g.,* Turner v. Pennsylvania, 338 U.S. 62, 65–66, 69 S.Ct. 1352,

93 L.Ed. 1810 (1949); United States v. Wolfe, 307 F.2d 798, 801 (7th Cir. 1962).

The credibility of a key witness is often, as here, critical to the accused's case; effective impeachment helps the government.[4] The government would not violate *Napue* by offering a statement which it believes to be voluntary simply because a witness, in order to bolster a changed story, charges that he was intimidated by improper police tactics. But if the charge is stated under oath and a factual issue established, the court and the government may not simply brush it aside. The court has a duty to make an inquiry outside the hearing of the jury sufficient to satisfy itself that there is nothing to the claim; and should the charge be substantiated, it is wrong that the government benefit from the tainted evidence.

Neither the confession cases nor *Napue* deal with the exclusion of impeaching statements. But, in *Harris*, the Court was careful to point out that there was no claim that the confession had been coerced; its further insistence that the "truthworthiness" of an impeaching statement satisfy "legal standards" strongly implies that it would not favor the use of statements extracted by coercion. *Id.* at 224, 91 S.Ct. 643. In a similar case holding that suppressed statements made in the absence of counsel could be used for impeachment, the Second Circuit also noted that it would be a different question if the prior admission were found to be unconstitutionally coerced. United States v. Curry, 358 F.2d 904, 912 (2d Cir. 1965).

■ We conclude that although there is no absolute parallel between the exclusionary rule relative to confessions and that relative to impeaching statements

of witnesses, there is a point at which the same considerations apply to both. That point has been reached here because there is a substantial claim by the defendant that the impeaching statement offered by the government was obtained by police threats and other blatant forms of physical and mental duress. Where such a claim is made, and supported by sworn testimony, the court has a duty to conduct its own inquiry and to exclude the statement if found to have been unconstitutionally coerced.[5] Its duty stems from "the concept of due process, which now protects the accused against pretrial illegality by denying to the government the fruits of its exploitation of any deliberate and unnecessary lawlessness on its part." United States v. Toscanino, 500 F.2d 267 at 275 (2d Cir. 1974). We emphasize that our holding goes no further than this; it is not to be interpreted as making applicable the *Miranda* or even pre-*Miranda* rules inferring involuntariness from circumstances falling short of the grave misconduct here mentioned. Since our decision is premised upon the rationale that use of coerced testimony entails a violation of the defendant's due process right to a fair trial, there is no standing problem. LaFrance is not complaining of the purported denial of Brown's constitutional rights, but only of his own.

■ It does not follow that LaFrance had a federal constitutional right to have voluntariness also put to the jury. That contention is disposed of by *Lego, supra,* holding that there is no such right. In the case of confessions, Massachusetts has traditionally required voluntariness to be put to the jury if the

---

4. In the present case, Brown's statement was a major event in the trial. It easily could have affected the outcome. His claims, if believed, would establish that he was questioned for a long period of time, took drugs in the presence of his interrogators, was frightened and dazed, and eventually signed a statement known to himself and the police to be false. These claims have been denied both in government testimony at trial and in affidavits furnished to us; and we do not suggest that we accept

Brown's version. Brown, indeed, has since pleaded guilty to a perjury charge stemming from his testimony in this case; and while it is not clear what testimony was perjured, his conviction obviously bolsters the government's, and diminishes LaFrance's, position.

5. We make no distinctions between placing the statement before the jury by leading questions, by reading its contents, or otherwise.

**36**

court resolves the issue against the accused. But the Massachusetts courts have never passed on a procedure involving a statement other than a confession. It may be that they will not wish to extend the confession rule to statements by witnesses. That decision, in any event, is not for us to make.

Since voluntariness did not have to be put to the jury, a new trial is not inevitable. Rather the case should be returned to the Massachusetts court so that a hearing on the issue of coercion may be held there.[6] If the statement is found not to have been coerced, the prior judgment of conviction may stand. Otherwise the judgment should, of course, be vacated. The district court did not err in not itself holding an evidentiary hearing on voluntariness. We leave to the district court pending completion of state proceedings the status of LaFrance, who has been released on recognizance.

█ As assistance in interpreting this decision, we add the following: In any except the most glaring case, we will not look with favor on claims of coercion not timely and expressly raised during trial.[7] Unless a serious factual dispute can be shown to exist, and one in which, if successful, the defense would be entitled to exclusion, no hearing at all is necessary. *Cf.* Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27

L.Ed.2d 524 (1970). Finally, when need for a hearing is established, the government's burden to prove an absence of physical or mental coercion is by a preponderance of the evidence. *Lego, supra.* In all except the most unusual case, we should anticipate that the court's duty of inquiry would require minimal interruption of proceedings.

Remanded for proceedings in accordance herewith.

6. In Jackson v. Denno, 378 U.S. at 395–396, 84 S.Ct. at 1790, the Court said:
"Obviously, the State is free to give Jackson a new trial if it so chooses, but for us to impose this requirement before the outcome of the new hearing on voluntariness is known would not comport with the interests of sound judicial administration and the proper relationship between federal and state courts. We cannot assume that New York will not now afford Jackson a hearing that is consistent with the requirements of due process. Indeed, New York thought it was affording Jackson such a hearing, and not without support in the decisions of this Court, [footnote omitted] when it submitted the issue of voluntariness to the same jury that adjudicated guilt. It is both practical and desirable that in cases to be tried hereafter a proper determination of voluntari-

ness be made prior to the admission of the confession to the jury which is adjudicating guilt or innocence. But as to Jackson, who has already been convicted and now seeks collateral relief, we cannot say that the Constitution requires a new trial if in a soundly conducted collateral proceeding, the confession which was admitted at the trial is fairly determined to be voluntary."

7. While we do not today decide the question, we do not envisage that any new principle embodied herein will be given retroactive effect. *Cf. Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 15 L.Ed.2d 453 (1966); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).