**UNITED STATES ex rel. Leon BLACKWELL, Petitioner,**

v.

**Gayle M. FRANZEN, et al., Respondents.**

No. 80C1778.

United States District Court, N. D. Illinois, E. D.

Oct. 9, 1981.

On Motion to Reconsider Jan. 7, 1982.

---

Prentice Marshall, Jr., Levy & Erens, Chicago, Ill., for petitioner.

Kenneth A. Fedinets, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Leon Blackwell ("Blackwell") was convicted of murder and burglary March 9, 1977 in the Circuit Court of Cook County. After exhausting all available state remedies Blackwell brought what is now his Amended Petition for a Writ of Habeas Corpus (the "Petition")[1] charging that he was denied rights under the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth

---

1. Blackwell filed his original petition pro se. Upon reassignment of the action to this Court it appointed Prentice Marshall, Jr., Esq. as Blackwell's counsel. Both the Petition and the briefing on Blackwell's behalf have been submitted by Mr. Marshall, upon whose able presentation the Court has drawn substantially in preparing this opinion.

Amendment.[2] Respondents have moved to dismiss or for summary judgment and Blackwell has filed a cross-motion for summary judgment. For the reasons stated in this memorandum opinion and order respondent's motion is denied and Blackwell's motion is granted.

### Harris Orange's Confession

On June 4, 1975 someone broke into and burglarized the home of Agnes Bookham, an elderly lady, and murdered Ms. Bookham. Blackwell was tried and convicted by a jury for both burglary and murder.

Only the testimony of Harris Orange ("Orange") connected Blackwell to the crimes. Orange testified that he, Blackwell and Charlita Ponce ("Ponce") had joined in the break-in and burglary and that the other two (but not he) had taken part in the actions that led to Ms. Bookham's death.[3] Orange too had initially been indicted for both burglary and murder. But on August 6, 1976, almost one year after he had been charged, Orange agreed to testify for the prosecution. In exchange, Orange pleaded guilty to burglary and the state dropped the murder charge. Under that arrangement Orange testified at Blackwell's trial and provided the state's only directly incriminating evidence.

On cross-examination Orange's credibility came under serious attack, for he admitted that:

(1) He would probably lose the "deal" he had made with the State if he did not testify so as to incriminate Blackwell.

(2) He had been a narcotics addict and committed thefts to support his drug habit.

(3) He had prior convictions.

(4) He had pleaded guilty to a charge of narcotics possession and then falsely told the sentencing judge that he was a heroin addict (he was in fact addicted to pills) to avoid incarceration.

But the most critical attack—and the one that has led to this action—was the attempt by Blackwell's counsel to imply that Orange was fabricating testimony to avoid a prosecution for murder. On redirect the prosecutor responded by offering into evidence the transcript of an oral confession Orange had made shortly after his arrest August 30, 1975. That confession, made before any deal was struck with the State, was entirely consistent with Orange's testimony at trial.

Once the confession was introduced it became a principal focal point of the prosecution's case. It was read to the jury at the close of the State's case and then emphasized by the prosecutor both in closing argument and in rebuttal (when he mentioned it six times).

On recross-examination Blackwell's attorney questioned Orange about the circumstances under which the confession was given (Tr. 159–60):

Q. Well, before you made the statement ... were you ever physically intimidated by the police to make a statement?

A. Yeah.

Q. Were you struck in the head, for example, in an attempt to get a statement?

A. Yes.

\*      \*      \*      \*      \*      \*

Q. Did you tell Mr. Schaffner and Mr. Cutrone [Assistant State's Attorneys] that you were beaten by the police department?

A. Yes.

Q. Did they ever take cigarettes and put them on your body in an attempt to make you say something about this homicide?

---

**2.** To be more precise, of course, this argument is also a due process contention. For convenience this opinion will refer to the Sixth Amendment, though that Amendment's standards are necessarily applied to a state defendant via the Fourteenth.

**3.** Another witness testified that Blackwell, Orange and Ponce had been at his apartment earlier the same evening and had left there together. Absent Orange's testimony, of course, that did not implicate Blackwell in the crimes.

A. One of them burned me with a cigarette.[4]

\* \* \* \* \* \*

Q. Well, how long did they strike you in an attempt to make you say this information about this homicide?

A. About three hours.

Late in the recross-examination, however, Orange was asked (Tr. 172):

Q. Was the statement which you made in police custody which you had indicated was made August 30, 1975, was that statement a voluntary statement on your part, is that—was it given of your own free will, or was it forced out of you, so to speak?

A. It was given of my own free will.

Blackwell contends that the evidence revealed on recross-examination indicated Orange's confession was not voluntary. Blackwell argues its admission into evidence without first conducting a hearing to determine whether it was in fact voluntary violated due process.[5]

Respondents counter that Blackwell lacks standing to assert Orange's Fifth Amendment right. But Blackwell is not advancing another's Fifth Amendment right. Instead he urges that *his own* due process rights were violated because inherently unreliable evidence—an involuntary confession—was admitted.

Two Courts of Appeals have addressed that issue: *LaFrance v. Bohlinger*, 499 F.2d 29 (1st Cir. 1974); *Bradford v. Johnson*, 476 F.2d 66 (6th Cir. 1973), affirming on the opinion in 354 F.Supp. 1331 (E.D.Mich.1972). Each decision found a due process violation when a witness' involuntary confession was admitted into evidence. But each dealt with a somewhat more egregious situation than this one.

4. There is evidence that the cigarette burn was unintentional. Orange testified (Tr. 160) "I believe he did that when he was swinging at me with a cigarette in his hand."

5. If the confession was involuntary the taint would extend not only to the confession but to Orange's direct trial testimony and to the last answer quoted in this opinion. Orange testified that when he decided to "turn State" (Tr.

In *LaFrance* the witness *recanted* at trial the statements made in the earlier confession and stated that the earlier confession was the product of coercion.[6] As already noted, at trial Orange both affirmed his earlier statement and said that it was voluntary. *LaFrance* held that a hearing as to voluntariness was required but that (499 F.2d at 35):

The government would not violate *Napue* by offering a statement which it believes to be voluntary simply because a witness, in order to bolster a changed story, charges that he was intimidated by improper police tactics. But if the charge is stated under oath and a factual issue established, the court and the government may not simply brush it aside.

That language implies that the witness must indicate that he gave a false statement as a result of coercion before a hearing need be held.

In *Bradford* the witness' testimony at trial was consistent with his prior confession. But the Court found that (354 F.Supp. at 1336):

The in-court testimony of a witness obtained by these means when he must surrender himself immediately after to those persons who tortured him, does not comport with due process. Payne's statement in court that his in-court testimony was not coerced is, under the above circumstances, worthless since it is affected by the same coercion.

There is no evidence that Orange was under the threat of any physical harm at the time of Blackwell's trial. There is though a direct nexus between Orange's confession and his trial testimony, given his plea bargain to testify consistently with the challenged confession (Tr. 116–17).

110) and entered into the plea agreement dramatically lessening his criminal charges and potential punishment, he agreed that his testimony against Blackwell would "say what's on my statement" (Tr. 117).

6. In that case the witness was a defense witness whose earlier confession had been used to impeach him.

LaFrance and Bradford thus stand for the principle that a confession cannot be admitted in the face of clear evidence that it is unreliable either because (1) the statement is later recanted in court or (2) the witness had been subjected to torture and faced its possible resumption after the trial. At the other end of the spectrum is *Harris v. New York*, 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971), in which a defendant was held properly impeached by a prior inconsistent statement obtained in violation of his *Miranda* rights:

> It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that trustworthiness of the evidence satisfies legal standards.

Orange's confession falls somewhere in between. Simple failure to give *Miranda* warnings does not of course carry the inference of a *false* statement (the rule is rather a prophylactic one), whereas physical abuse generally implies an almost inherent unreliability. But Orange testified that the confession was voluntary, and his testimony at trial was fully consistent with that confession. Were both those areas of testimony not suspect in light of Orange's plea-bargain commitment, the trial court's action might be viewed only as an erroneous evidentiary ruling.

Such errors usually do not rise to the level of due process violations. It is well settled that, *Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir. 1979):

> State court rulings on the admissibility of evidence may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.

While this case poses a close call, the Court is disposed to find constitutional error in the trial judge's decision *not* to hold a hearing on the voluntariness of the confession.

True enough, there were indicia of reliability despite Orange's testimony that he was beaten. But those indicia were themselves open to question. All such questions should have been resolved by a hearing to comport with due process.[7] In any case, the closeness of the issue is more than resolved by the issue next discussed.

### Orange's Statement to His Attorney

Immediately after Orange testified that the confession had been given of his "own free will," Blackwell's attorney sought to ask Orange whether the voluntariness of the confession had been challenged in court (Orange said his lawyer had done so) and whether that challenge had followed a discussion between Orange and his lawyer. That line of inquiry was blocked by the trial judge when the prosecutor (!) asserted Orange's attorney-client privilege. Blackwell's attorney then made an offer of proof that Orange would have testified that he told his attorney the confession was false and he was "beaten into making that statement." Blackwell contends that the refusal to permit those questions violated his Sixth Amendment right to confront an adverse witness.

In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) the prosecutor's most important eyewitness was on probation for a juvenile offense when the offense was committed. Under state law any reference to the witness' juvenile record was inadmissible. Defendant's inability to explore the fact that the witness was on probation was held a denial of effective cross-examination and thus of defendant's Sixth Amendment rights.

*Davis* involved interests different from those posed by Orange's testimony. As the Court put it (415 U.S. at 319, 94 S.Ct. at 1111):

---

7. Because the issue is whether due process required the hearing the trial court did not provide (not a *factual* determination to which the statutory "presumption of correctness" extends), the limits imposed on this Court's habe-

as review by *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), do not apply. See this Court's opinion in *People ex rel. Rivers v. Franzen*, 522 F.Supp. 443 (1981).

Whatever temporary embarrassment might result to [the witness] or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—was outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial plaintiff's witness.

In the scale of privacy values, that exemplified by the attorney-client privilege ranks higher than confidentiality of juvenile court records. When Orange spoke to his attorney he was under indictment for murder and burglary. To expose such statements generally would undermine the ability of a criminal defendant to consult counsel. Two factors may be argued to take the situation outside the norm:

(1) Normally a witness desires to conceal an incriminating statement made to a lawyer that conflicts with his exculpatory public statements. Here the witness allegedly confessed to police; what is sought to be revealed is the recanting of that confession.

(2) Orange himself never asserted the privilege. Instead the prosecutor's objection to the question was sustained. Orange was never asked if he objected, and the privilege was clearly his to waive.

Again the constitutional problem—this time the confrontation clause question posed by invocation of the attorney-client privilege for (not by) Orange—is not an easy one. Blackwell's counsel was permitted a wide range of cross-examination of Orange as to his confession and his character in general.

■ But Blackwell's Sixth Amendment claim need not be viewed in isolation. It is inherently related to the due process claim dealt with earlier in this opinion. When the evidence of possible coercion of Orange's confession is coupled with thwarting Blackwell's ability to reveal the possibility that the confession was recanted, this Court must find constitutional error. That error can be viewed from either Sixth or Fourteenth Amendment perspectives.

It might be argued that a voluntariness hearing was not required just because Orange was beaten. But when the fact that the confession may have been recanted is added to the mix, the reliability of the confession is even further impugned. Orange's statement at trial that the confession was voluntary is now highly suspect not only because of his deal with the prosecution but because of the possible recantation. Orange's alleged statement to his attorney is the only evidence of his position *after* the beating but *before* the deal. Before the confession could be admitted, a hearing should have been held to determine whether it was sufficiently reliable to satisfy due process requirements.[8]

From a Sixth Amendment point of view, Blackwell was prevented from cross-examining Orange not simply as to whether he had recanted a confession, but as to whether he had recanted a confession made after he was beaten. Given that combination of factors, the prior confession should not have been introduced if Orange were permitted to assert his attorney-client privilege to block evidence of its recantation.

From the prosecution's standpoint Orange's earlier statement was crucial evidence to rebut a strong indication that Orange might be fabricating a story to avoid a murder charge. Once evidence of the earlier statement was admitted, Blackwell should have been afforded every opportunity to challenge its reliability.

### Conclusion

There is no genuine issue as to any material fact, and Blackwell is entitled to a judgment as a matter of law. This Court will not simply order a judicial hearing as to the voluntariness of the Orange confession, for the *jury* was deprived of the opportunity to evaluate Orange's testimony on a full presentation of the facts. Accordingly this Court will issue a writ of habeas cor-

---

**8.** Evidence of recantation would bring the fact situation in this case that much closer to *La-* *France.*

pus, with respondents directed to discharge Blackwell unless the State of Illinois gives him a new trial within a reasonable time.

## ON MOTION TO RECONSIDER

Leon Blackwell ("Blackwell") was convicted of murder and burglary March 9, 1977 in the Circuit Court of Cook County. After exhausting all available state remedies Blackwell brought what is now his Amended Petition for a Writ of Habeas Corpus (the "Petition")[1] charging that he was denied rights under the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment.[2] This Court's October 9, 1981 memorandum opinion and order (the "Opinion") granted Blackwell's motion for summary judgment, issued a writ of habeas corpus and directed respondents to discharge Blackwell unless the State of Illinois gave him a new trial within a reasonable time.

Respondents have now filed a motion to reconsider the Opinion. For the reasons stated in this memorandum opinion and order, their motion is granted in part and denied in part.

Respondents' motion to reconsider is based on two arguments they have never before raised. Before addressing the merits the Court must repeat a message it has already sent to the Attorney General's office, *United States ex rel. Cosey v. Wolff,* 526 F.Supp. 788 (N.D.Ill.1981):

At the outset the Court is constrained to comment on a distressing phenomenon that it has recently found evidenced in this and other like cases. It almost seems as though state defendants do not take the prospect of losing habeas petitions with real seriousness until that in fact occurs, only then devoting full attention to issues and arguments that should have been posed in the first instance. Whatever pragmatic justification they may perceive for that process where pro se petitions are involved (perhaps the notion of husbanding resources), it is plainly inapplicable where as here the state defendants face competent counsel. And of course it is really an imposition on the Court for counsel not to give the matter their best attention initially, forcing two opinions where only one should be required.

Indeed the Court finds substantial force in Blackwell's position that respondents' arguments are improperly presented in a motion to reconsider.[3] But in light of the importance of an opinion granting habeas corpus relief, the Court will proceed to the merits.

### Due Process Rights

At the outset the Opinion held the state trial court's failure to hold a hearing to determine the voluntariness of Harris Orange's testimony had violated Blackwell's due process rights. Respondents now contend that (1) Blackwell failed to object to the admission of the evidence at trial and (2) under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) such failure waives the right to raise the issue via federal habeas corpus.

■ *Wainwright* was based on the concept that a federal court could not review a trial court error for which there was an adequate and independent state law ground on which the state appellate court could have rejected the defendant's claim. That principle applies with equal force when that

1. This Court again thanks Blackwell's appointed counsel Prentice Marshall, Jr., Esq., for the valuable assistance he has provided his client and the Court.

2. As in the Court's earlier opinion, references to the Sixth Amendment, rather than more accurately to the Fourteenth, are made as a matter of convenience.

3. Respondents and Blackwell filed cross-motions for summary judgment, supported by several briefs and responsive briefs. This Court's Opinion addressed every issue raised by either party. It is ironic that respondents now assert two arguments based on Blackwell's claimed waiver because he had not raised issues before the state court. They prefer to apply a double standard of waiver, one (more stringent) to Blackwell and a very different one to their own prior failure to raise issues before this Court. Such a posture ill becomes the lawyers for the "People of the State of Illinois."

state law ground is procedural. *Wainwright, id.* at 86–87, 97 S.Ct. at 2506–07. So too in *Francis v. Henderson*, 425 U.S. 536, 539–40, 96 S.Ct. 1708, 1710–11, 48 L.Ed.2d 149 (1976) the Supreme Court denied habeas review to a claim involving the composition of a grand jury when a state procedural rule required that such a challenge be raised before trial and the petitioner had failed to do so.

■ There is no question that Blackwell failed to request a hearing to determine the voluntariness of the Orange confession. Thus if Illinois law requires that an objection claiming involuntariness be raised during trial, *Wainwright* would bar consideration of that claim here.

Though neither party has provided this Court with any relevant authority, the answer is plain. Illinois law is well summed up in *People v. Bryant*, 101 Ill.App.2d 314, 318–19, 243 N.E.2d 354, 356 (1st Dist. 1968):

> In *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1965), the United States Supreme Court held that a defendant in a criminal trial has a procedural due process right to a fair hearing and a reliable determination of the voluntariness of his confession. In Illinois, a defendant may raise the issue either by pre-trial motion or when the confession is introduced into evidence by the state. *People v. Strader*, 38 Ill.2d 93, 230 N.E.2d 569 (1967). And once the issue is raised, the trial court must even on its own motion conduct a hearing on the voluntariness of the statement. *People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673 (1965). However, if the defendant was adequately represented at trial and did not there question the voluntariness of his confession, he cannot raise the issue on appeal. *People v. Hiller*, 7 Ill.2d 465, 131 N.E.2d 25 (1965); *People v. French*, 33 Ill.2d 146, 210 N.E.2d 540 (1965). We so hold in the instant case. The due process requirements set forth in *Jackson v. Denno, supra*, do not require that a hearing on voluntariness be had; it is enough if the defendant had a sufficient opportunity to question the confession. It is up to him

and his counsel to take advantage of the opportunity.

*Accord, People v. Scott*, 106 Ill.App.2d 98, 245 N.E.2d 490 (1st Dist. 1969); *People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673 (1965); *People v. Harper*, 31 Ill.2d 51, 198 N.E.2d 825 (1964).

In fact Illinois courts have been flexible in holding the right to a voluntariness hearing preserved. For example, in *People v. Tripkovich*, 6 Ill.App.3d 37, 284 N.E.2d 323 (1st Dist. 1972) the defendant did not object at the time of the testimony, but the Appellate Court held an objection later in the trial required the trial court to have held such a hearing. Similarly in *People v. Mosley*, 100 Ill.App.2d 361, 241 N.E.2d 476 (1st Dist. 1968) the defendant moved to suppress but did not specifically ask for a voluntariness hearing. Nonetheless the court held he had raised the voluntariness issue, so that a hearing was mandated.

Many Illinois Appellate and Supreme Court decisions have refused to review whether a confession was voluntary if the defendant failed properly to raise the issue at trial. While those cases involved *defendants'* confessions, the same concept should apply with at least equal force to a witness' confession.

*Wainwright* therefore applies here unless there is adequate cause for the issue not having been raised in the state court (433 U.S. at 87–91, 97 S.Ct. at 2506–2508). But Blackwell has failed to present any persuasive reason of that nature.

In a final attempt to avoid *Wainwright*, Blackwell contends he raised the issue on appeal and the Appellate Court dealt with it by implication. That is apparently not the case. Instead the Appellate Court considered:

(1) whether a co-conspirator's confession is admissible as evidence of guilt against a defendant not present during the confession; and

(2) whether the trial court properly excluded evidence that Orange had filed a motion to suppress his confession in his own criminal proceeding.

Neither question deals squarely with the voluntariness issue.

Blackwell does refer to the following statement in the Points and Authorities section of his Illinois Appellate Court brief:

> The trial court erred in allowing the prosecution to publish a prior confession, involuntarily obtained, of Harris Orange which incriminated the defendant.

That language might but need not be viewed as attacking the admissibility of the Orange confession solely because it was involuntarily obtained. Any ambiguity in that respect should be resolved in light of the Illinois Appellate Court's silence on the subject. And given the long line of Illinois precedent, such silence must be interpreted as indicating that the issue of voluntariness either (1) was not raised in the brief or (2) had been waived by Blackwell's failure properly to object at trial.

Despite the tardiness of respondents' assertion, this Court is therefore inclined to concur in its soundness.[4] If so, *Wainwright* bars Blackwell's claim that a voluntariness hearing should have been held as to Orange's confession.

### Sixth Amendment Rights

As an independent matter, the second part of the Opinion found constitutional error in the trial court's refusal to let Blackwell ask Orange whether he had recanted his confession in a conversation with his attorney. Instead the trial court sustained an objection to that line of questioning as protected by the attorney-client privilege. Blackwell's counsel then made the following offer of proof (Tr. 165–66):

> The Court: Well, the Court is going to sustain an objection, if an objection is going to be made as to the conversation had between—
> Mr. Menacker: I'd like to make an offer of proof.
> The Court: You may make your offer of proof.
> Mr. Menacker: Make an offer of proof, that ... he [Orange] said to a lawyer that was appointed for him that he was beaten into making that statement [the confession].

Here too respondents advance a *Wainwright*-based claim for the first time. They contend this Court cannot consider the propriety of that ruling because the offer of proof was insufficient, so that an independent state law ground bars Blackwell's claim.

According to respondents a lawyer's summation of anticipated testimony is insufficient; instead the lawyer must question the witness to show what the testimony would have been. That argument is not supported by the relevant Illinois case law. *Hession v. Liberty Asphalt Products, Inc.*, 93 Ill.App.2d 65, 71, 235 N.E.2d 17, 20–21 (2d Dist. 1968) teaches the appropriate technique to be employed in an offer of proof:

> To some extent, the requisite formality of an offer of proof will depend upon the circumstances of the particular case. Where it is obvious that the witness is competent to testify to a fact and it is obvious what his testimony will be if he is permitted to give it, a brief statement by counsel may suffice. *Schusler v. Fletcher*, 74 Ill.App.2d 249, 253, 219 N.E.2d 588 (1966). In such a case as this, however, where it is by no means clear what the witness will say or what his basis will be for saying it, the offer of proof must be considerably more detailed and specific than the statement counsel may hear. Only in this way can a reviewing court know what was excluded and determine whether the exclusion was proper.

*Accord, Volvo of America Corp. v. Gibson*, 83 Ill.App.3d 487, 491, 39 Ill.Dec. 22, 25, 404 N.E.2d 406, 409 (1st Dist. 1980).

This case clearly falls into the first category discussed in *Hession*. Blackwell sought to establish that Orange had told his lawyer that his confession was the result of

**4.** It should be observed that Blackwell's counsel advances cogent reasons to the contrary. If this case is reviewed on appeal (as is likely), the Court suggests that the closeness of this issue may appropriately be taken into account in conjunction with the Sixth Amendment question.

abusive treatment by the police. Orange's competence to testify was indeed "obvious." What his testimony would be was equally "obvious." No more than a "brief statement by counsel" was required.

It is plain that the trial judge was fully aware of the nature of the questions and the evidence Blackwell sought to introduce (contrast for example *Peluso v. Singer General Precision, Incorporated, Link Division,* 47 Ill.App.3d 842, 8 Ill.Dec. 152, 365 N.E.2d 390 (1st Dist. 1977), where a more formal offer of proof was found necessary). This Court finds as a matter of Illinois law that the offer of proof was sufficient. Blackwell's argument as to the cross-examination of Orange is therefore not barred by *Wainwright.*

Because *Wainwright* does not affect this Court's original holding as to the Confrontation Clause violation, the decision to grant the writ of habeas corpus must stand. Either the voluntariness issue or the Confrontation Clause decision was independently sufficient to support granting of the writ.

Indeed, though this Court may no longer consider whether a voluntariness hearing should have been held, it *can* consider the effect of evidence that Orange's confession may have been coerced. Were there no other evidence to that effect, Orange's discussions with his lawyer on that score might have been of marginal worth at best. But in light of the evidence at trial, Orange's conversation with his attorney was both important and probative. Though he testified his confession was voluntary, there was uncontradicted evidence that he was beaten by police officers at the time of the confession. Orange's testimony, given as part of a deal he had worked out with the prosecution, thus becomes at least suspect.

This Court's statement in the Opinion still reveals the central issue:

> Orange's alleged statement to his attorney is the only evidence of his position *after* the beating but *before* the deal.

Given the central importance of that testimony, this Court's holding as to the Confrontation Clause violation is sufficient to stand as a basis for granting the writ.

### Conclusion

Respondents' motion to reconsider is granted in part and denied in part. This Court finds the voluntariness issue probably barred by *Wainwright,* but it finds no cause to change its holding as to the Confrontation Clause issue. Accordingly the order issuing the writ of habeas corpus and requiring respondents to discharge Blackwell unless the State of Illinois gives him a new trial within a reasonable time is reaffirmed.