UNITED STATES of America ex rel. Leon BLACKWELL, Petitioner-Appellee, Cross-Appellant,

v.

Gayle M. FRANZEN and Marvin Reed, Respondents-Appellants, Cross-Appellees.

Nos. 82–1125, 82–1509.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1982.

Decided Sept. 13, 1982.

Rehearing and Rehearing In Banc Denied Nov. 12, 1982.

Kenneth A. Fedinets, Asst. Atty. Gen., Chicago, Ill., for respondents-appellants, cross-appellees.

Prentice H. Marshall, Jr., Chicago, Ill., for petitioner-appellee, cross-appellant.

Before BAUER, WOOD and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner Leon Blackwell was convicted in the Circuit Court of Cook County of murder and burglary. After the Illinois Court of Appeals affirmed, *People v. Blackwell*, 76 Ill.App.3d 371, 31 Ill.Dec. 952, 394 N.E.2d 1329 (1st Dist. 1979), petitioner filed for a writ of habeas corpus in federal district court, claiming that the conviction violated his Sixth and Fourteenth Amendment right to confront witnesses against him. The District Court granted the writ. For the following reasons, we reverse in part and affirm in part. 540 F.Supp. 151.

I

Petitioner's claim focuses on the testimony and cross-examination of the State's principal witness Harris Orange. Orange, who was the State's sole occurrence witness, admitted to participating with petitioner in the burglary of the home of Agnes Bookham. Based on his testimony, the State was able to show that petitioner was responsible for murdering Agnes Bookham during the course of that burglary.

Defense counsel on cross-examination tried to impeach Orange's credibility as a witness. Orange admitted that his attorney had arranged a deal with the State whereby in exchange for his testimony against petitioner and a guilty plea to burglary, the State would, after petitioner's trial, drop the murder charge against Orange and recommend a reduced sentence of two to six years. Orange acknowledged that with credit for "good time" and time already served in county jail he would be released in one or two months. He further

testified that, upon the State's recommendation, his bail had been reduced from $150,000 to $5,000 and he had been moved out of the general population of the county jail to the more comfortable "witness quarters." Defense counsel then questioned Orange about whether the deal obligated him to incriminate petitioner:

Q: Mr. Orange, it is your understanding of this deal, is it not, that if you were to change your testimony now from the way you explained it yesterday, to [the prosecution], you could lose this deal, isn't that correct?

A: No.

Q: In other words, you can say that you want to say now, without any worry of losing that deal?

A: Say what's on my statement.

On redirect, the State attempted to rehabilitate Orange by admitting a statement Orange had made to police shortly after his arrest but before he was charged with murder. No promises of leniency had been made until nearly one year later. That statement implicated both Orange and petitioner in the burglary, but blamed petitioner for the murder. Orange identified the statement as his and agreed that it was substantially identical to his courtroom testimony.

Defense counsel, on recross-examination, questioned Orange about the voluntariness of that statement. Orange stated that for about three hours following his arrest he was physically intimidated by the police to make a statement. He admitted that he was struck on the head and shoulder, kicked in the leg, and burned by a cigarette.[1] Orange, however, denied that he made the statement because of any beating, though he did say that he had told the state's attorney that he had been beaten. Defense counsel then asked whether Orange had talked to his attorney at any time before or during his preliminary hearing. The State objected. In response, defense counsel gave a summary offer of proof:

he did that when he was swinging at me with a cigarette in his hand."

---

1. Orange later clarified the cigarette incident: "They didn't stick but one cigarette. I believe

He denied that that statement was the truth. He said to a lawyer that was appointed for him that he was beaten into making that statement. That he did not participate and that Blackwell did not participate in this, and that the only reason he knew what to say in the statement, was because of what the policeman told him over a two-day period. I suggest that the State is using this statement to show a prior occasion he was consistent without a deal, and I'm saying, the fact it isn't really being consistent, it goes to his credibility, and that it is an issue here.

Sustaining the objection, the court concluded that "the danger of having you go into testimony of that nature, which should be protected by the attorney-client privilege, really overrides any relevancy it may have to the issues in this case" and that the privilege "should be invaded only where it is clear that there is a connection." Defense counsel continued his line of questioning:

Q: Was the statement which you made in police custody which you have indicated was made August 30, 1975, was that statement a voluntary statement on your part, is that—was it given of your own free will, or was it forced out of you, so to speak?

A: It was given of my own free will.

Q: Did you ever attempt to challenge the voluntariness of that statement in a courtroom?

A: Yes, my lawyer did.

Q: Was that after conversation with— had between you and your lawyer?

The court again sustained an objection by the State:

The Court has to take notice that in a very high percentage of the charges before this Court, there are motions to suppress made, and those motions are made after the attorneys—after the attorney determines that is the best course of action to be taken on behalf of the client,

and the Court does not feel that the probative value of the questions here warrant the pursuit of that line of questioning. The Court assumes that a motion to suppress was made, and that the witness did say that he was beaten, and it was involuntarily, but that's not probative to anything. So, as far as the Court is concerned, the objection will be sustained.[2]

The Illinois Court of Appeals, in affirming the conviction, ruled that the trial court had properly exercised its discretion in limiting the scope of cross-examination and that petitioner had suffered no prejudice. 76 Ill.App.3d at 378–79, 31 Ill.Dec. at 958, 394 N.E.2d at 1335. Agreeing with the trial court, the appellate court reasoned that a decision by Orange's attorney to challenge the confession as involuntary was not particularly probative of whether the confession was credible. The court further noted that defense counsel had been given "wide latitude in cross-examining Orange concerning the events surrounding his arrest, interrogation, confession and treatment by the police." Id. at 378, 31 Ill.Dec. at 958, 394 N.E.2d at 1335.

The District Court, however, found that the limitation placed on cross-examination violated petitioner's Sixth and Fourteenth Amendment right to confront witnesses against him. Noting that the constitutional issue was "not an easy one," the court placed great weight on the fact that "Orange's alleged statement to his attorney is the only evidence of his position *after* the beating but *before* the deal." (Original emphasis.) The court also considered the allegation that Orange recanted his confession as particularly probative in view of evidence that the confession was involuntary. An involuntary confession, the court stated, is inherently unreliable.

## II

The Sixth Amendment right of confrontation requires that a defendant be giv-

2. Defense counsel did not argue that the State could not invoke the witness' attorney-client privilege. Since that issue was not preserved in state court or raised below, we assume for the purpose of this appeal that the privilege was properly invoked.

en an opportunity for effective cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). That right, however, "is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. But its denial or significant diminution calls into question the ultimate ' "integrity of the fact-finding process" ' and requires that the competing interest be closely examined." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) (citations omitted).

In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court considered whether a witness privilege so limited cross-examination that it violated the defendant's right of confrontation. The direct testimony of the prosecution's "crucial witness' in that case identified the defendant as one of the men he had seen standing alongside a car near where a stolen safe was later discovered. The prosecution sought, and the trial court granted, a protective order preventing the defense from referring to the witness' juvenile record during cross-examination. That order, based on an Alaska statute designed to protect the anonymity of juvenile offenders, prevented defense counsel from showing that at the time the witness was assisting the police in identifying the defendant the witness was on probation for burglary. As the Court noted, the witness "might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation." *Id.* at 311, 94 S.Ct. at 1107.

The *Davis* Court held that the interests in nondisclosure of juvenile records "is outweighed by the defendant's right to probe into the influence of possible bias in the testimony of a crucial identification witness." *Id.* at 319, 94 S.Ct. at 1111. The Court recognized that exposure of the witness' biases, prejudices, or ulterior motives, as opposed to a mere general attack on credibility, is an important function of the constitutionally protected right of cross-examination. *Id.* at 316–17, 94 S.Ct. at 1110. While stating that the trial judge has "broad discretion," the Court found that the cross-examination that was permitted was not adequate to develop the issue of bias to the jury. *Id.* at 318, 94 S.Ct. at 1111. Defense counsel had been permitted to ask the witness *whether* he was biased, but was unable to develop a record from which to argue *why* the witness might have been biased. *Id.*

■ It is undisputed that Harris Orange was a crucial State witness. We also agree with the District Court that the attempted cross-examination concerning matters within the attorney-client privilege takes on added importance when coupled with evidence that Orange had been physically abused just prior to making the statement. The traditional common law view[3] was that involuntary confessions are untrustworthy. *See* McCormick on Evidence § 147 (1972). Voluntariness of a witness' confession incriminating the defendant thus is a matter which should be weighed by the jury, if not at the outset by the trial judge. This is particularly significant where, as here, the evidence suggests that the witness entered into a deal with the State under which he agreed to testify against the defendant in accordance with his prior confession.

■ But *Davis* does not require a reviewing court to isolate the particular limitation on cross-examination. Rather, "the question in each case must finally be whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony." *United States v. Rogers*, 475 F.2d 821, 827 (7th Cir. 1973), *quoting Fountain v. United States*, 384 F.2d 624, 628 (5th Cir. 1967), *cert. denied*, 390 U.S. 1005, 88 S.Ct. 1246, 20

---

**3.** Exclusion of a defendant's involuntary confession under the Fourteenth Amendment, however, is premised on a "complex of values," not merely the probable unreliability of the confession. *Jackson v. Denno*, 378 U.S. 368, 385–86, 84 S.Ct. 1774, 1785, 12 L.Ed.2d 908 (1964).

L.Ed.2d 105 (1968). To answer that question the court must look to the record as a whole, *Rogers*, 475 F.2d at 827, and to the alternative means open to the defendant to impeach the witness, *United States v. Brown*, 634 F.2d 819, 825 (5th Cir. 1981). *See also Chambers*, 410 U.S. at 298, 93 S.Ct. at 1047. The court must ultimately decide whether the probative value of the alleged privileged communication was such that the defendant's right to effective cross-examination was substantially diminished.

Defense counsel was given wide latitude in cross-examining Orange. Orange admitted that he had led a life of crime to support an $85 a day drug habit, that he had been convicted of theft, possession of preludin, and attempt to obtain narcotics by use of a false prescription, and that he once had falsely told a sentencing court that he was a heroin addict in order to avoid a term in the penitentiary. Defense counsel, moreover, extensively questioned Orange about the agreement he had made with the State, drawing out Orange's motive to lie. In fact, Orange stated that he expected the State to help him in a probation revocation proceeding if he did a good job testifying against petitioner. Orange faced a possible ten-year sentence for violating the terms of his probation.

In particular, defense counsel was able to make a record from which to argue that Orange's confession, and thus his testimony, were unreliable. Orange testified openly on recross-examination to the events surrounding his arrest and interrogation. He admitted that he had been physically and psychologically abused by the police in an effort to elicit a confession and that he later complained of being beaten to the state's attorney. Defense counsel also got Orange to acknowledge that his attorney in a preliminary hearing had challenged the voluntariness of his confession, which raised a point of inconsistency with Orange's position at trial that the statement was freely given. Defense counsel additionally questioned Orange about several statements he made on direct examination that appeared inconsistent with or unsupported by his written confession. Moreover, although it is not clear from the record what occurred during Orange's preliminary hearing, petitioner's attorney could have avoided the attorney-client privilege by further pursuing the position Orange had taken in filing his motion to suppress. Finally, while defense counsel made an adequate record from which to argue that Orange's confession was unreliable, his closing statement to the jury did not even mention that possible inference. Instead, defense counsel focused on other evidence impeaching Orange's credibility.

Thus, unlike in *Davis*, defense counsel had an opportunity to probe the character and motives of Orange sufficiently to permit the jury to assess his credibility as a witness. The attorney-client privilege did not work to prejudice petitioner's Sixth Amendment right to cross-examine the State's principal witness. We sympathize with the District Court's observation that this is a close question, and under slightly different circumstances, we might view the state trial court's faithfulness to the attorney-client privilege as an affront to the defendant's right of cross-examination. But the state trial court, we believe, assessed the probative value of that proposed line of questioning by noting that motions to suppress are often perfunctory and that any statement Orange may have made to his attorney was purely self-serving. If the alleged recantation had occurred under circumstances making it less self-serving, we might not permit the attorney-client privilege to bar effective cross-examination regardless of the extent to which defense counsel was otherwise able to impeach Orange. Since the state trial and appellate courts balanced the interests served by the attorney-client privilege against what they determined to be the probative value of the offered testimony, we are particularly reluctant, in view of principles of federalism, to interfere and substitute our own judgment. Unlike in *Davis*, the trial court did not blindly adhere to the asserted privilege. While this case is close, we believe that petitioner was not denied his right of effective cross-examination. Defense counsel

was able to make a record from which to argue that Orange had a strong motive to inculpate Blackwell and was able to test the reliability of the statement made to the police, a statement which was clearly against Orange's interests at the time.

### III

Petitioner cross-appeals from an order of the District Court which found that *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), bars petitioner from claiming that the state trial court's failure to hold a hearing to determine the voluntariness of Orange's statement violated due process. *See La France v. Bohlinger*, 499 F.2d 29 (1st Cir.), *cert. denied*, 419 U.S. 1080, 95 S.Ct. 669, 42 L.Ed.2d 674 (1974); *Bradford v. Johnson*, 476 F.2d 66 (6th Cir. 1973), *aff'g*, 354 F.Supp. 1331 (E.D.Mich. 1972); *cf. Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The District Court initially ruled for petitioner on the merits of that issue, but reversed itself when respondents filed a motion to reconsider, raising the *Wainwright* question for the first time. Upon reconsideration the District Court found that petitioner did not object to the admission of Orange's testimony and therefore, under Illinois law, the alleged right to a voluntariness hearing was not preserved. *See People v. Bryant*, 101 Ill.App.2d 314, 318–19, 243 N.E.2d 354, 356 (1st Dist. 1968). The District Court concluded that "*Wainwright* therefore applies here unless there is adequate cause for the issue not having been raised in the state court (433 U.S. at 87–91, 97 S.Ct. at 2506–09). But Blackwell has failed to present any persuasive reason of that nature."

 On appeal, petitioner does not dispute the District Court's finding that no "cause" had been shown, but argues only that respondents had waived the *Wainwright* issue. Brief of Petitioner at 17 n.*. We disagree. Waiver based on *Wainwright* is an affirmative defense which must be set forth in the responsive pleading. *See* Fed. R.Civ.P. 8(c).[4] If the respondent answers

on the merits without relying on *Wainwright*, the district court may treat the "contemporaneous objection" defense as waived. *Smith v. Estelle*, 445 F.Supp. 647, 659–60 (N.D.Tex.1977), *aff'd*, 602 F.2d 694, 708 n.19 (5th Cir. 1979), *aff'd*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Section 2243, 28 U.S.C., however, provides that "[t]he return and all suggestions made against it may be amended, by leave of the court, before or after being filed." *Cf.* Fed. R.Civ.P. 15(a). Although respondents did not seek leave to amend as such, a district court may, in the exercise of sound discretion, treat a motion for reconsideration as a petition for leave to amend the return. *Gladden v. Gidley*, 337 F.2d 575, 577–78 (9th Cir. 1964). Petitioner does not assert that he was substantially prejudiced by the amendment. Indeed, petitioner's appointed counsel filed a very thorough brief in opposition to respondents' motion.

Although the district court entertained the *Wainwright* argument, it nonetheless criticized respondents' lack of diligence:

> At the outset the Court is constrained to comment on a distressing phenomenon that it has recently found evidenced in this and other like cases. It almost seems as though state defendants do not take the prospect of losing habeas petitions with real seriousness until that in fact occurs, only then devoting full attention to issues and arguments that should have been posed in the first instance.... [I]t is really an imposition on the Court for counsel not to give the matter their best attention initially, forcing two opinions where only one should be required.

*Quoting United States ex rel. Cosey v. Wolff*, 526 F.Supp. 788 (N.D.Ill.1981) (Shadur, J.) (on motion to reconsider). Failure to make a conscientious response only contributes to the tremendous burden habeas corpus actions place on district courts, and a writ erroneously issued on the basis of an inadequate response furthermore jeopardizes important concerns of federal-state comity.

---

**4.** The Federal Rules of Civil Procedure are applicable to habeas corpus proceedings to the extent that practice in habeas corpus is not set forth in federal statutes. Fed.R.Civ.P. 81(a)(2).

IV

Based on the foregoing discussion, we conclude that petitioner's right of confrontation was not violated and that the District Court properly applied the *Wainwright* rule. Accordingly, the decision of the District Court is REVERSED IN PART AND AFFIRMED IN PART.