Sabelo T. NEKU, Appellant,

v.

UNITED STATES, Appellee.

No. 90–CF–1467.

District of Columbia Court of Appeals.

Argued Nov. 25, 1992.

Decided Feb. 12, 1993.

Barbara E. Sosnick, for appellant.

Thomas R. Eldridge, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, and Mary Murphy, Asst. U.S. Attys., were on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and MACK, Senior Judge.[*]

[*] Although Senior Judge Pryor participated in the oral argument of this case, he was subsequently replaced by Senior Judge Mack, who participat- ed in the decision on the basis of the briefs, the written record, and the tape of oral argument.

FARRELL, Associate Judge:

Chiefly on the basis of testimony by an undercover police officer and a former co-defendant (Anthony Carter), a jury found appellant guilty of unlawful distribution of cocaine. D.C.Code § 33–541(a)(1) (1988). Appellant assigns multiple errors on appeal, but the only argument requiring extended discussion is his claim that in denying defense counsel's request to call Carter's former attorney as a witness to impeach Carter's testimony through prior inconsistent statements, the trial judge erroneously permitted a claim of attorney-client privilege to prevail over the defendant's Sixth Amendment right of confrontation. In the circumstances here we reject this argument, and finding no other error, we affirm the conviction.

## I.

On the night of March 5, 1990, police officer Renee Holden, working in plain-clothes, saw appellant approach Anthony Carter on Fort Totten Drive in Northeast Washington. She heard him tell Carter that he "was out," after which Carter handed appellant ziplock bags containing a white substance. Holden approached appellant and asked if she could buy "a couple of twenties," meaning cocaine at $20 per unit. Appellant then handed Holden a ziplock bag containing cocaine in return for two twenty dollar bills whose serial numbers had been pre-recorded. Appellant handed the money to Carter, and the latter entered the car of a friend and drove away.

Officer Holden returned to her car and followed Carter, meanwhile broadcasting her position to the arrest team. A minute or two later she broadcast a description of appellant, describing him as a black male who spoke with what seemed to be a Jamaican accent, wearing black pants and a beige coat with a red hood and black cap. Holden followed Carter to a convenience store where other officers arrested and searched him, recovering the prerecorded

money. The same officers detained appellant, and some twenty four minutes after the purchase, Holden positively identified appellant as the person from whom she had made the buy.

Carter pleaded guilty to attempted distribution of cocaine, and at trial testified against appellant. He identified appellant as the person to whom he had given the bags of cocaine on March 5 which appellant then sold to Officer Holden. Carter's arrangement with appellant and at least one other "runner" that night was that they would bring Carter customers; he would then conduct the sale himself or through the intermediary; and he would pay the latter in money or drugs. Although Carter had seen appellant frequently in the neighborhood, he did not know his name at the time of the sale and spoke with him only on the night of these transactions. On cross examination, Carter acknowledged that by pleading guilty to attempted distribution in return for agreeing to testify against appellant, he was avoiding a mandatory minimum sentence.

## II.

## A.

At the start of the defense case, appellant's counsel stated that he intended to call Carter's former attorney, James Maloney, to testify about statements Carter had made to Maloney that would impeach Carter's testimony inculpating appellant, but that Maloney had concerns about breaching Carter's attorney-client privilege. The trial judge deferred discussion of the matter until new counsel was appointed to represent Carter. In court, Carter later objected to any testimony by Maloney about things he had told him during their relationship; and Maloney stated that he would not testify about any such statements without a release from appellant or unless ordered to

by the court. Appellant's counsel proffered that if called as a witness, Maloney would state that during his representation of Carter he had asked Carter whether appellant's statements that he did not know Carter were true, and that Carter's "reply was in the affirmative, indicating that he did not know Mr. Neku."

■ The trial judge pointed out that appellant had not sought to lay a foundation for the expected impeachment by asking Carter about any prior statements on cross-examination. For this reason, and because Carter had asserted the attorney-client privilege with respect to any statements he had made to Maloney during the representation, the judge ruled that the proffered testimony by Maloney was inadmissible.[1]

## B.

Appellant argues that Carter could not properly assert the attorney-client privilege so as to defeat appellant's right to impeach Carter, an important corroborative witness for the government, with prior inconsistent statements about his acquaintance with appellant. Given a defendant's Sixth Amendment right to confront witnesses against him, appellant contends the trial judge could not fairly rely upon defense counsel's failure to question Carter about the statements initially (a failure remediable by allowing recall of the witness), and that cases such as *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), hold that common law or statutory privileges barring testimony must yield in appropriate circumstances to the exercise of a defendant's constitutional rights.

■ The issue presented thus involves the potentially competing demands of three doctrines: the foundational requirements for impeachment with prior inconsistent

---

1. The judge also found that Carter had not waived the attorney-client privilege either because he had made the proffered statements to his attorney in the cell block with other persons nearby, or because Maloney had communicated the statements to appellant's counsel. We agree that Carter never waived the privilege. *See, e.g.,*

*Continental Oil Co. v. United States*, 330 F.2d 347, 349–50 (9th Cir.1964) (no waiver of attorney-client privilege where attorneys representing different clients exchanged memoranda containing confidential communications); Rule 1.6, District of Columbia Rules of Professional Conduct.

statements, the attorney-client privilege, and the Sixth Amendment right of confrontation. The government first reminds us that "[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system," quoting *Michigan v. Lucas,* — U.S. —, —, 111 S.Ct. 1743, 1748, 114 L.Ed.2d 205 (1991) (in turn quoting *United States v. Nobles,* 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975)). The government points to the settled obligation of an examiner, as a predicate for impeaching with a prior inconsistent statement, to "bring[ ] the statement to [the witness's] attention during ... cross-examination, alert[ ] him to the time, place and person to whom he allegedly made it, and allow[ ] him to explain or deny it." *Chaabi v. United States,* 544 A.2d 1247, 1248 (D.C. 1988). Ordinarily, the trial court has discretion to decline to allow a breach of this requirement to be remedied by recall of the witness for further cross-examination, whether as a court witness or by the defense. *See id.* at 1248–49. Nevertheless, this discretion is not unbounded when the basic right of a defendant to present evidence or confront an accuser is at stake. *See Chambers,* 410 U.S. at 295–98, 93 S.Ct. at 1046–47 (dealing with a Mississippi common law rule that a party may not impeach his own witness).[2] Moreover, it is difficult in this case to tell how much significance the trial judge attached to appellant's failure to lay the impeachment predicate given Carter's eventual and, as the judge found, valid assertion of the attorney-client privilege to bar inquiry into his prior statements.

■ There is no question that "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). This "oldest of the privileges for confidential communications known to the common law" is meant "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). In the criminal context the privilege acquires Sixth Amendment protection. *E.g., Gunther v. United States,* 97 U.S.App.D.C. 254, 255–56, 230 F.2d 222, 223–24 (1956). The government therefore admonishes that if the privilege may be easily breached to allow introduction of a witness's prior inconsistent statements, the price may be to open up to view entire discussions between attorney and criminal defendant as the prosecutor in turn fairly seeks to minimize the asserted inconsistency in context. This is a valid concern, and we would not adopt a rule that would "whittle away at the privilege upon slight or equivocal circumstances." *People v. Flores,* 71 Cal.App.3d 559, 139 Cal.Rptr. 546, 549 (1977). Still, because the attorney-client privilege "has the effect of withholding relevant information from the factfinder," the Supreme Court has said that it "applies only where necessary to achieve its purpose." *Fisher,* 425 U.S. at 403, 96 S.Ct. at 1577. And, like other statutory or common law privileges, it must give way in particular circumstances to the preservation of constitutional guarantees. *See, e.g., Davis v. Alaska,* 415 U.S. at 319, 94 S.Ct. at 1111 (state interest in nondisclosure of juvenile records "outweighed by the defendant's right to probe into the influence of possible bias in the testimony of a crucial identification witness"); *United States v. Nixon,* 418 U.S. 683, 708, 713, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039 (1973) (generalized assertion of presidential privi-

---

2. In *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), on which the government relies, the Supreme Court applied in carefully restricted fashion to a breach of a state notice and discovery rule the principle that constitutional rights do not relieve a defendant of the duty to comply with "the legitimate demands of the adversarial system." *Lucas,* — U.S. at —, 111 S.Ct. at 1748; *see id.* ("We did not hold in *Taylor* that preclusion [of testimony] is permissible *every time* a discovery rule is violated"). *Lucas,* for its part, went no further than to reverse a Michigan court ruling that the notice-and-hearing provision of the state's rape-shield statute "violates the Sixth Amendment *in all cases* where it is used to preclude evidence of past sexual conduct between a rape victim and a defendant." *Id.* (emphasis added).

lege for confidential communications, though "inextricably rooted in the separation of powers under the Constitution," must yield "to the demonstrated, specific need for evidence in a pending criminal trial"). State and lower federal courts have recognized that a criminal accused's right to confront the evidence and cross-examine witnesses against him may supplant a common law privilege. "[W]hen conflict is found between the constitutional right of confrontation and the exercise of a privilege based on public policy, the constitutional right must control." *Salazar v. State*, 559 P.2d 66, 78 (Alaska 1976) (Sixth Amendment right overrides the marital privilege). *See also United States v. Brown*, 634 F.2d 819, 824 (5th Cir.1981) (en banc) ("[I]n some cases, a privilege or rule of evidence must give way to the defendant's Sixth Amendment rights").[3]

The question before us, then, is whether in the circumstances of this case appellant's right to confront Carter with an alleged inconsistent statement should have prevailed over Carter's assertion of the attorney-client privilege. Were the answer to this question yes, we would be hard pressed to sustain the trial judge's refusal to permit the re-opening of cross-examination of Carter, as defense counsel requested, to lay the necessary foundation for impeachment. *See Chambers, supra.* There are few reported cases dealing with the particular clash between the Sixth Amendment right of confrontation and the attorney-client privilege. Most useful is *United States ex rel. Blackwell v. Franzen*, 688 F.2d 496 (7th Cir.1982), in which the facts were different but the court's discussion describes the "balance[ of] interests" which the trial court must undertake when these doctrines intersect:

> [T]he question ... must finally be whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability

to test the truth of the witness's direct testimony. To answer that question the court must look to the record as a whole, and to the alternative means open to the defendant to impeach the witness. The court must ultimately decide *whether the probative value of the alleged privileged communication was such that the defendant's right to effective cross-examination was substantially diminished.*

*Id.* at 500–01 (emphasis added; citations and internal quotation marks omitted). The court upheld the defendant's conviction against collateral attack because the state courts had "balanced the interests served by the attorney-client privilege against what they determined to be the probative value of the offered testimony...." *Id.* at 501. *See also People v. Flores, supra* (no justification for overriding privilege where proffered impeachment evidence *via* attorney's testimony was not of "such compelling force to require a waiver" of the privilege, particularly where similar impeachment was available by other means).

In light of these authorities, we hold that when a defendant proffers evidence of prior inconsistent statements by a witness who is important to the government's case[4] and those statements otherwise would be protected by the attorney-client privilege, the evidence must be admitted on proper foundation if, in the trial judge's view, it is sufficiently probative on credibility to outweigh the interests served by the privilege. Although the force or probative value of the statements need not be "compelling," it must be clear and substantial. Essential to this determination are both the intrinsic probative weight of the statements and the availability of other means by which the defendant can pursue similar impeachment.

Applying this test to the present case, we observe first that Officer Holden provided direct independent evidence of ap-

---

**3.** The parties agree that this case presents no conflict between appellant's Sixth Amendment right and Carter's constitutional privilege against self-incrimination. *E.g., Salim v. United States*, 480 A.2d 710 (D.C.1984).

**4.** In *Blackwell*, as in *Davis v. Alaska, supra*, the witness in question was "a crucial State witness." 688 F.2d at 500.

pellant's guilt. Nonetheless, Carter confirmed Holden's testimony and her identification of appellant as the immediate seller; and so we assume that Carter was an important, though not a "crucial," government witness. We next observe that, even without regard to his alleged prior statement, Carter was impeached by evidence of his plea agreement with the government which spared him a mandatory minimum sentence in return for his testimony. On the other hand, except through appellant's own arguably interested testimony, he lacked means other than Carter's prior statements to impeach the witness directly about his knowledge of, and inferentially his complicity with, appellant. We conclude, however, that these factors ultimately are of minor weight in the balance because here, under any reasonable assessment, the probative value of the proffered impeachment was inadequate to outweigh the interests served by the attorney-client privilege. The evidence proffered was simply that Carter, responding to his attorney's question whether appellant's statements that he did not know Carter were true, replied "in the affirmative, indicating that he did not know Mr. Neku." Yet Carter had testified that he did not know appellant's name, had spoken with him only on the night in question, and had used him on that occasion as only one among the "runners" who would bring him customers. Appellant does not explain why Carter could not easily have reconciled this testimony with the alleged prior statement that he did not know appellant. More than the impeachment proffered here is required before a criminal defendant's consultations with his attorney may be opened up to exploration at trial.[5]

Appellant implies that he could have established a greater inconsistency by a voir dire of Carter's attorney to elicit exactly what Carter had told him, but that the judge closed the door on the subject. The record does not bear this out. Appellant's sole argument to the trial court was that Carter had waived the privilege by talking to his lawyer in the presence of others; no suggestion was made that the judge could properly balance the competing constitutional and evidentiary principles only by a voir dire of the attorney to flesh out the content of the communications. Indeed, no argument at all was made that Carter's privilege could be overridden by a sufficient showing that appellant would otherwise be denied important impeachment material.

■ We also are not convinced that a remand is necessary to require the trial judge to reconsider his ruling in light of the principles discussed here. True, there are indications in the judge's reasoning that he may have perceived the mere assertion of the privilege by Carter to be conclusive on the admissibility question, in the absence of a waiver. But the judge was aware of the ambiguous nature of the offered impeachment, and his repeated mention of appellant's failure to raise the inconsistency in questioning Carter suggests that he viewed the desire to call the attorney as something of an afterthought. Given the intrinsic weakness of the proffered inconsistency, we have no doubt that on remand the judge would make the same ruling as before, and that we would sustain it. *Cf. Ibn–Tamas v. United States,* 407 A.2d 626, 636 (D.C. 1979) (remand on issue committed to trial judge's discretion unnecessary where judge, properly instructed, "inevitably would reach the same result").

### III.

■ Appellant's remaining contentions require little discussion. A *Monroe–Farrell* inquiry [6] was not required by defense counsel's last minute request for a continuance simply because it adverted to appellant's absence from the city and hence counsel's inability to confer with him for

---

5. Appellant does not dispute that a defendant may still assert the privilege as to confidential statements after the representation has ended. Rule 1.6, comment 28, DISTRICT OF COLUMBIA RULES OF PROFESSIONAL CONDUCT.

6. *Monroe v. United States,* 389 A.2d 811 (D.C.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *Farrell v. United States,* 391 A.2d 755 (D.C.1978).

weeks before the trial.[7] The denial of the continuance itself was well within the trial judge's discretion. *Kimes v. United States,* 569 A.2d 104, 114 (D.C.1989). Further, once appellant was allowed to present testimony that he had tested drug-free following his arrest (impliedly countering Carter's assertion that he had paid appellant partly with drugs), it was not error—and certainly not plain error, there having been no objection—to let the government adduce evidence of appellant's previous drug use. Finally, the judge did not abuse his discretion in denying appellant's request for appointment of a fingerprint expert to examine the ziplock bags recovered from Carter. *Berry v. United States,* 528 A.2d 1209, 1210 (D.C.1987); *Gaither v. United States,* 391 A.2d 1364, 1368 (D.C.1978).[8]

The judgment of the Superior Court is Affirmed.

**7.** Two and a half months before trial, counsel had announced ready for trial without any suggestion of inadequate opportunity to consult with appellant; the case had then been continued with the consent of the parties. There was also evidence of record that appellant's recent unavailability stemmed from his having voluntarily absented himself from the jurisdiction in violation of his pretrial release conditions. *See Witherspoon v. United States,* 557 A.2d 587, 593 (D.C.1989).

**8.** Although the proffered testimony of an expert would have been that appellant's fingerprints were not on any of the prerecorded twenty dollar bills, the evidence at trial revealed that after the bills were seized from Carter, they were passed among at least three police officers. Moreover, appellant was able to call to the jury's attention that the government had performed no analysis for fingerprints.